1
2
3
4
5
6               **UNITED STATES DISTRICT COURT**
7                    **DISTRICT OF NEVADA**
8
9    RODERICK SAWYER,                    )
                                         )
10                                       )
            Plaintiff,                   )
11                                       )          3:10-cv-00088-RCJ-WGC
            vs.                          )
12                                       )                **ORDER**
     MORROW COLE et. al.,                )
13                                       )
            Defendants.                  )
14   _____)

15          This is a prisoner civil rights case pursuant to 42 U.S.C. § 1983.  Before the Court is the

16   magistrate judge's Report & Recommendation ("R&R") (ECF No. 69) as to Defendants' Motion

17   for Summary Judgment (ECF No. 61).  For the reasons given herein, the R&R are adopted in part

18   and rejected in part, and the Motion for Summary Judgment is granted.

19   **I.      FACTS AND PROCEDURAL HISTORY**

20          At all relevant times, Plaintiff Roderick Sawyer was in the custody of the Nevada

21   Department of Corrections ("NDOC"). (Second  Am. Compl. 1, ECF No. 35).  The events giving

22   rise to this action took place while Plaintiff was housed at High Desert State Prison ("HDSP").

23   (*Id*.).  Defendants are Greg Cox, Jordan Evangelista, Genesa Garcia, Duane Graham, James

24   Harpel, John Kotronakis, Cole Morrow, and Clifton Smith. (*Id*. at 2–3).  The only remaining claim

25   is an Eighth Amendment conditions-of-confinement claim related to Plaintiff's allegation that he

26   was exposed to unsanitary conditions in his cell because he was denied access to cleaning supplies,

27   resulting in the growth of mold, bacteria, and fungus in his cell and causing him adverse health

28   effects. (*See id.* at 4–7, 9–11).  Defendants have moved for summary judgment, arguing: (1)

1    Plaintiff was not subjected to any objectively unsafe conditions; (2) Plaintiff cannot establish any

2    Defendant acted with deliberate indifference; (3) Defendants are entitled to qualified immunity;

3    and (4) Defendant Morrow is entitled to summary judgment because he cannot be held liable under

4    a theory of supervisory liability.

5    **II.    LEGAL STANDARDS**

6          A court must grant summary judgment when "the movant shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8    Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

9    *Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

10   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

11   principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court

13   uses a burden-shifting scheme:

14          When the party moving for summary judgment would bear the burden of proof at trial,
            it must come forward with evidence which would entitle it to a directed verdict if the
15          evidence went uncontroverted at trial.  In such a case, the moving party has the initial
            burden of establishing the absence of a genuine issue of fact on each issue material to
16          its case.

17   *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

18   and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of

19   proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

20   evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that

21   the nonmoving party failed to make a showing sufficient to establish an element essential to that

22   party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S.

23   at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied

24   and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

25   398 U.S. 144, 159–60 (1970).

26          If the moving party meets its initial burden, the burden then shifts to the opposing party to

27   establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

28

2

1    475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need

2    not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

3    factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

4    truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.

5    1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on

6    conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

7    1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and

8    set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*

9    Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

10        At the summary judgment stage, a court's function is not to weigh the evidence and

11    determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

12    U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to

13    be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable

14    or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

15   **III.    ANALYSIS**

16        The Eighth Amendment prohibits the imposition of "cruel and unusual punishment[]." U.S.

17    Const.  amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which

18    he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509

19    U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Although conditions

20    of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal

21    civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Prison

22    officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal

23    safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir.  1986), *abrogated in part on other*

24    *grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Johnson v.  Lewis*, 217 F.3d 726, 731

25    (9th Cir.  2000); *Hoptowit v.  Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). "The circumstances,

26    nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a

27    constitutional violation has occurred." *Johnson*, 217 F.3d at 731.

28

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

Plaintiff resided in two cells when he was housed in the segregated unit at HDSP between May 2009 and January 2010. He was housed in Unit 1, Cell A 10B from May 5, 2009 to June 9, 2009, and he was transferred to Unit 2, Cell D 33A on June 10, 2009, where he remained until he was transferred to another facility in January 2010.

Defendants argue that the evidence establishes that Plaintiff did not suffer from any objectively unsafe conditions. Defendants do not dispute that Plaintiff submitted a grievance on June 20, 2009, complaining of unsanitary conditions and requesting cleaning supplies. They assert, however, that their response was reasonable. In response to his grievances, Plaintiff was informed that the supplies had been depleted, and once they were received he was instructed to contact his unit officer to obtain permitted cleaning supplies. Defendants also argue that safety inspections at HDSP and sanitation inspection reports in 2009 and 2010 contain no reference to mold, fungus, bacteria, or otherwise unsanitary conditions in Plaintiff's cell. Defendants also note that Plaintiff's medical records do not reflect that he suffered any health effects as a result of exposure to mold, fungus, or bacteria.

Plaintiff responds that during the 245 days he was confined in segregated housing at HDSP, he was denied access to cleaning supplies, resulting in the growth of fungus, mold, and bacteria, causing him to suffer from a respiratory illness, vomiting, disorientation, dizziness, shortness of breath, and body aches. He attests to his belief that his cell contained mold, fungus, and bacteria as a result of the denial of cleaning supplies. He also alleges that he has no knowledge of any prison

1   official ever inspecting his cell for unsanitary conditions following his complaints.  He alleges he

2   suffered from nausea, sleeplessness, headaches, and other ailments as a result of the unsanitary

3   conditions in his cell.

4        The Court finds that Plaintiff has not raised a genuine issue of material fact as to the

5   objective component of his Eighth Amendment claim.  That is, in construing the evidence in the

6   light most favorable to Plaintiff, the Court concludes that a reasonable fact-finder could not

7   conclude that the alleged unsanitary conditions were objectively sufficiently serious to rise to the

8   level of an Eighth Amendment violation.  Plaintiff provides no evidence of his alleged medical

9   ailments or evidence that any ailments were linked to mold or fungus, and Plaintiff's medical

10   records do not indicate any such ailments.  Nor do the inspection reports indicate mold or fungus

11   problems.

12        Defendants also argue Plaintiff cannot establish that any of them knew of, and acted with

13   deliberate indifference to, a substantial risk of serious harm.  Plaintiff responds that Defendants

14   knew of and disregarded the unsanitary conditions of Plaintiff's cell, jeopardizing his health and

15   safety.  The Court need not examine the subjective prong, because Plaintiff has not shown a triable

16   issue of fact on the objective prong.  But even assuming Plaintiff informed Defendants of the

17   alleged mold and fungus, because he produces no evidence of having sought medical treatment due

18   to any illness caused by the mold or fungus, Defendants cannot be charged with deliberate

19   indifference to a substantial risk of serious harm.  They can in this case at most be charged with

20   deliberate indifference to cosmetic cleaning requests.

21        Finally, an official is not entitled to qualified immunity if: (1) there has been a

22   constitutional violation; and (2) the state of the law was clear enough at the time of the violation

23   that a reasonable person in the defendant's position would have known his actions violated the

24   plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court has discretion to analyze the

25   second prong first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555

26   U.S. 223, 236 (2009).  A "[g]overnment official's conduct violates clearly established law when, at

27   the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

28   'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131

S.Ct.  at 2083 (alterations in original) (quoting *Anderson v.  Creighton*, 483 U.S. 635, 640 (1987)); *see also Padilla*, 678 F.3d at 758 (citation omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

The Court finds that the right in question was not "clearly established" at the time of the challenged conduct, and the individual Defendants are therefore entitled to qualified immunity. The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, including sanitary conditions of confinement. *See Farmer*, 511 U.S. at 832.  But the right against seriously dangerous unsanitary conditions cannot be held to be "clear" at a so high level of generality that any claim of uncleanliness necessarily rises to the level of a constitutional violation against which an officer has no qualified immunity.  It is not "beyond debate" that it is "cruel and unusual" for a prisoner to be denied cleaning supplies to remedy alleged mold and fungus when he has not even sought medical treatment based upon any alleged effects of the mold and fungus, and where routine inspections have failed to discover any problem.

## CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 69) is ADOPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 61) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IS IT SO ORDERED.

Dated this 12th day of December, 2012.

_____
ROBERT C. JONES
United States District Judge